## ROBERT LEIGHTON *versus* SAMPSON REED & *al.*

Where an attachment was made on mesne process, the action entered in Court at the regular term, defaulted, judgment entered up and execution issued; and where at the next succeeding term of the Court, " on motion of the plaintiff, it was ordered by the Court, that the judgment and execution aforesaid be annulled, and that the execution aforesaid be returned into the clerk's office; and the action was thereupon brought forward to " that term, — *It was holden,* that the attachment was dissolved, and that another attachment, made after the time when the first suit was brought forward, and before the time of the last judgment, had the priority.

WRIT OF ENTRY. Both parties claimed under Robert Leighton, Sen'r.

The demandant claimed title by virtue of an attachment, judgment and levy. His attachment was made on the ninth day of April, 1846; judgment was rendered in his favor at June Term, of the District Court, 1846; and his execution was duly levied within thirty days of the judgment, and recorded within three months.

The tenants attached the premises on February 28, 1845, entered their action at March Term, 1845, produced a regular copy of a judgment in the same suit at March Term, 1846, of the district court, levied their execution within thirty days on the same premises, and duly recorded the levy.

It was contended for the demandant, th..t the attachment of the tenants had been dissolved, and had ceased to exist, at the time he made his attachment, and that therefore, he had the priority of title. It appeared that the defendants' action was defaulted at June Term, 1845, judgment was entered up as of that term, and an execution was taken out. This execution, however, was not enforced, and at the next October Term of the district court, " on motion of the plaintiffs, it was ordered by the Court, that the execution and judgment aforesaid, be annulled, and that the execution aforesaid, be returned into the Clerk's office. And the action was thereupon brought forward to said October Term, and from thence continued until" the next March Term, when judgment was rendered, and the levy made as above stated. The book of records show all these proceedings.

*Fox*, for the demandant, contended that the tenants had lost their attachment by taking their judgment at June Term, 1845. The proceedings at the October Term following, could not revive and restore the attachment, when once lost. 4 Mass. R. 100; 3 Fairf. 241; 9 Mass. R. 265; 23 Pick. 465.

*Augustine Haines*, for the tenants, said, that if the demandant had made his attachment between June and October Terms, there would have been more ground, perhaps, for his claim of priority. But our rights were fully restored by the judgment of Court, before any one interposed. The judgment rendered by mistake at June Term, 1845, was annulled, and was as if it had never existed. This is the only final judgment in the action, and the record must conclude the tenant, from saying, that any judgment had been before rendered in that action.

The opinion of the Court was drawn up by

WELLS J. — In this action, " the Court is to render judgment according to the legal rights of the parties." The demandant commenced an action against one Robert Leighton, April 9, 1846, and on the same day, caused the demanded premises to be attached, judgment was rendered in the action,

and an execution issued, and within thirty days from the rendition of the judgment, the execution was levied on the demanded premises, the levy having been made July 14, 1846.

The tenants commenced an action against the same Robert Leighton, Feb. 27, 1845, and on the next day, caused the demanded premises to be attached; their action was entered at the June term, 1845, of the district court, in this county, when it was defaulted, judgment rendered, and an execution issued July 5, 1845.

At the ensuing October term of the district court, on the motion of the plaintiffs in that action, it was ordered by the court, that the execution and judgment be annulled, and that the execution be returned into the clerk's office, and the action was brought forward to the October term, and continued for judgment to the March term, 1846, of the same court, at which time judgment was rendered, an execution issued, and was levied on the demanded premises, April 17, 1846.

The tenants' attachment was prior to that of the demandant, and must prevail, unless it was dissolved by a neglect to make a levy, within thirty days, after the rendition of the first judgment.

The Rev. Stat. c. 114, § 35, among other things, provides that no real estate shall be held by virtue of an attachment, longer than thirty days, next after the day on which final judgment was rendered in the suit, in which the same was attached, to be taken in execution. The final judgment, mentioned in the statute, probably means one, from which no appeal is taken. Such a judgment is final upon the matters in controversy, if litigated, and also upon default. The judgment, at June term, 1845, has all the characteristics of a final judgment, and although a subsequent one was obtained, the declaring, that the first should be annulled, could not change the legal nature and consequences of it, as existing at the time when it was rendered. Both may be final in themselves of the matters in controversy. But the first, being a final one, the levy should be made in conformity to the statute, within thirty days from that time.

The Rev. Stat. c. 114, $ 94, provides, that the final judgment, mentioned in the thirty-fifth and thirty-sixth sections, shall be construed to be, that which is rendered in the original action, and not such as may be rendered on review or a writ of error.

The second judgment, in the present case, is in the nature of a review of the first, and the section last cited shows the intention of the Legislature, to limit the lien to thirty days after the first judgment, from which no appeal is taken.

*Suydam* v. *Huggeford*, 23 Pick. 465, is a very strong case in favor of the demandant, and no reasonable objections can be made to the principles contained in it.

If by obtaining a second judgment, the dissolution of attachments may be prevented, the rights of parties will be rendered uncertain and insecure.

It is true, that the demandant attached the premises, after the tenant's action had been brought forward, and execution had issued on the second judgment. The record exhibits the first judgment, as complete and finished ; no one could know by examining it, that any subsequent proceedings had taken place, and it does not appear, that the demandant had any knowledge beyond it. But if he had possessed a full knowledge of all the proceedings, when his attachment was made, he had a right to regard the first judgment as a final one, and the attachment was dissolved. The tenants having lost the lien, once secured by their attachment, it is immaterial at what time the demandant's attachment took place, provided it was made before the levy of the tenants.

In the case before cited, it is said, "if one loses a priority once acquired, by any want of regularity, or legal diligence in his proceedings, it is a case where no equitable principles can afford relief."

The court being of opinion, that the attachment, made upon the writ of the tenants, was dissolved, by the omission to levy their execution, within thirty days after the rendition of the first judgment, it becomes unnecessary to consider the other question raised by the demandant.

According to the agreement, the tenants should be defaulted, and the demandant recover the premises and costs.